## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

| 88 1051 |
| d103 144 |

### PETERS v. ANDERSON.

#### April 25th, 1892.

1. AGENTS—*Commissions—Case at bar.*—Receiver of insolvent bank employed agent to sell real estate upon commissions of ten per cent. It was not agreed whether commissions should be paid out of cash payment or out of entire price when paid. Agent sold for $85,000, whereof $10,000 was paid and default made as to residue;

HELD:

> Agent was entitled to ten per cent. only on such sum as had been or should be paid.

2. IDEM—*Decree of court—Estoppel.*—Receiver reported sale to court stating agreement as to commissions, and procured a decree for payment thereof, "whenever whole price should be fully paid." Agent, who was no party to the suit, drew an order on receiver for a sum out of any funds payable to him as commissions under the court's decree;

HELD:

> The order did not estop agent from denying correctness of the decree.

Appeal from decree of corporation court of city of Norfolk, rendered June 9th, 1891, on the petition of T. S. B. Anderson, filed against the appellant, W. H. Peters, receiver, in the chancery suit of *A. P. Thom & als.* v. *Dismal Swamp Canal Company & al.* Opinion states the case.

*T. S. Garnett*, for appellant.

*James F. Duncan* and *Neely & Seldner*, for appellees.

LEWIS, P., delivered the opinion of the court.

The facts out of which the controversy arises are substantially these :

The appellant is the receiver of the Exchange National Bank of Norfolk, duly appointed by the comptroller of the currency. The bank was a large creditor of the Dismal Swamp Canal Company. Some time prior to the 4th of February, 1889, the property and franchises of the company were sold by A. P. Thom and W. H. White, under a decree of the court below, in the suit of *Thom and White, trustees,* v. *The Dismal Swamp Canal Company and others.* At this sale the appellant, as receiver, became the purchaser, and the sale was duly reported to the court and confirmed. At his request, however, the title was for the time being " reserved."

On the 23d of November, 1889, the appellant filed his petition in the cause, stating that he had sold the property, and requesting that the same be ordered to be conveyed to Eugene T. Lynch and John C. Short by the name of the Norfolk and North Carolina Canal Company. The petition also stated that the price agreed to be paid was $85,000, less a commission of ten per cent. to be paid to the appellee, J. S. B. Anderson, " for his services in negotiating the sale." It was also stated that $10,000 was to be paid in cash, the balance in six months, and to be secured by a deed of trust on the property. Authority from the comptroller of the currency to allow the said commission, it was stated, had been obtained, and the court was asked to enter an order directing the receiver to pay the same to the appellee " whenever the whole of the purchase price aforesaid " should be fully paid by the purchasers.

On the same day an order was entered in accordance with the prayer of the petition.

On the 9th of December following, the appellee gave a draft on the receiver in favor of Worthington, Smith & Co., for $304.02, payable out of any funds in his hands for the payment of commissions " under the order of the corporation court of

the 23rd of November, 1889," notice of which assignment was accepted by the receiver.

More than a year afterwards, to-wit, on the 5th of January, 1891, the appellee filed his petition in the cause, alleging that injustice had been done him by the order entered on the 23rd of November, 1889, in that the payment of his commission was made contingent upon the payment by the purchasers of the whole of the purchase-money, whereas there was no such condition in his agreement with the receiver, but that the commission was payable immediately. He, therefore, prayed that the order be modified, so as to correct the alleged injustice.

The receiver answered this petition, insisting that the order was right, and when the matter came on to be heard, the decree complained of was entered, whereby the receiver was ordered to pay to the appellee out of the funds in his hands, as receiver, the sum of $8,500 with interest thereon from the 23rd of November, 1889, until paid, and costs.

It appears that ten thousand dollars of the purchase-money has been paid, but that as to the deferred payment the purchasers have made default; and the question to be determined is, when and how is the appellee's compensation to be paid? The appellant insists that no part of it is payable until the whole of the purchase-money shall have been paid. On the other hand, the appellee insists that it is payable immediately, *i. e.* out of the cash payment of ten thousand dollars.

We are of opinion that neither of these positions can be maintained. The record discloses no positive agreement between the parties upon the point in controversy, and the matter must, therefore, be determined in accordance with what seems to be the equities of the case. The testimony of the parties themselves is in several particulars in direct conflict. There are some important facts, however, which are undisputed. Thus, it is conceded that after negotiations for the property had been pending for a considerable time, the sale was

finally effected through the instrumentality of the appellee. The appellant himself so testifies. In his answer, which by agreement was treated as a deposition, he says : " Recognizing that it was through the offer of Mr. Anderson that Mr. Short (one of a syndicate) came to me as the purchaser of the property, I concluded to recommed to the comptroller of the currency an allowance of ten per cent. from the purchase-money when the same was paid to me, which recommendation the comptroller approved." And these terms were incorporated in the order of the 23rd of November, 1889.

The appellee, however, was not a party to the cause when the order was entered, nor does it appear that he had notice that such an order would be applied for. Neither does it appear that he knew of or approved the appellant's recommendation to the comptroller, or the action of the comptroller thereon, until after the order had been entered.

It is true that shortly after the entry of the order he drew on the receiver for $304.02, in favor of Worthington, Smith & Co., to be paid out of any funds in the receivers's hands payable to him (the appellee) " as commissions under the order of the corporation court, entered on the 23rd of November, 1889." But assuming that he was then cognizant of the terms of the order, it does not follow that he is thereby estopped to deny that those terms were correct. It is quite probable that when the draft was drawn, he supposed the whole of the purchase-money would soon be paid, and if that expectation had been realized, this controversy could not have arisen. But be that as it may, the appellant has in no way been prejudiced by the delay of the appellee to complain of the order, and we see no ground, therefore, for the application of the doctrine of estoppel.

It appears, then, that the appellee not only rendered valuable services in negotiating the sale, but that he, in fact, effected it. It is conceded, moreover, that those services are reasonably

worth ten per cent. of the sum agreed to be paid for the property. It is not equitable, however, in the absence of any positive agreement on the subject, that the whole of his compensation should be paid out of the cash payment, or that any more than ten per cent. of that payment should be paid to him. In other words, he is entitled to his proportionate share of that payment, viz., ten per cent., and so with respect to any future payments that may be made. He must account, however, before being paid anything, for any equitable assignment or assignments of the fund that he may have made, as to which an account must be taken by a commissioner of the court, after the case goes back to the lower court, unless the matter is agreed by the parties.

It is proper to add that we do not concur in the view, advanced in the argument by the appellant, that no compensation can be allowed the appellee on any other terms than those approved by the comptroller of the currency. To all intents and purposes the sale effected by the appellee was a judicial sale, and it was, therefore, competent for the court to settle the rights of the parties as to it should seem proper.

For the reasons, however, already stated the decree must be reversed, and the cause remanded for further proceedings in conformity with this opinion.

DECREE REVERSED.